CHICAGO, B. & Q. R. CO. v. RUSSELL et al.

No. 130.

District Court, W. D. Missouri, W. D. Sept. 5, 1939.

Langworthy & Matz, of Kansas City, Mo., for plaintiff.

C. C. O'Brien, of Kansas City, Mo., for defendants.

COLLET, District Judge.

The parties are in agreement as to the facts. The action is for the recovery of freight charges amounting to $89.10 on an interstate shipment of sugar in bags from Kansas City, Missouri, to Sioux City, Iowa, and arises under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.

The shipment in question originated at New Orleans, Louisiana, on September 13, 1935. It moved from that point to Cairo, Illinois, by the Federal Barge Lines on the latter's tariff 2–H, an all water tariff, not filed with the Interstate Commerce Commission. Upon arrival at Cairo it was stored for a time and then was re-shipped from Cairo, Illinois to Kansas City, Missouri on a through joint barge-rail rate from New Orleans, Louisiana, to Kansas City, Missouri. The shipment from Cairo to Kansas City was by the Missouri Pacific Railroad. Upon arrival at Kansas City it was stored for a time and then on January 16, 1936, re-shipped to Sioux City, Iowa, via the plaintiff C. B. & Q. R. R.

The question for determination is whether the shipment is entitled to "transit" at Kansas City, i. e. the privilege of storage in transit at that point. If the shipment is entitled to transit at Kansas City, plaintiff is not entitled to collect the higher rate represented by the amount sued for. If the contrary is true then the higher rate applies and recovery is warranted.

The determination of the question stated depends upon the determination of the point of origin of the shipment prior to its arrival at Kansas City. The Missouri Pacific tariff allows the privilege of transit only once (with exceptions not material here), and the plaintiff connecting carrier is concededly governed by that provision of the Missouri Pacific tariff. If, therefore, Cairo was the point of origin, in so far as the railroads were concerned, defendants were entitled to the transit privilege at Kansas City. If New Orleans was the point of origin, then the one transit privilege was exhausted by the storage in transit at Cairo.

Defendants contend that the Federal Barge Line shipment was entirely separate and distinct from the subsequent shipment by rail because the rail shipment from Cairo to Kansas City was governed by the Western Trunk Lines tariff, providing that it is "applicable only to tariffs referring hereto", and because the barge shipment from New Orleans to Cairo was under the Federal Barge Lines tariff which did not refer to the Western Trunk Lines tariff. To be effective for present purposes defendants theory of separability must be complete to the extent that what happened to the shipment before it reached Cairo or in reaching that point was none of the railroad's business any more than it would have been had it moved to Cairo by ox-cart or through the cane-brakes of Louisiana by safari, with which means of transportation the railroads disdain any connection.

The plaintiff contends that by reason of the fact that defendants obtained the benefits of a through rate from New Orleans to Kansas City by utilizing the joint barge-rail rate from New Orleans to Kansas City when they re-shipped from Cairo to Kansas City, they may not now contend that the shipment had its origin at Cairo. Illustrative of plaintiff's position is its assertion that it is and has a right to be interested in the manner the shipment reached Cairo, irrespective of whether the tariffs are specifically concurrent, because privileges have been extended to defendants under the joint barge-rail rate upon the assumption as asserted by defendants, that the shipment had its origin at New Orleans, and since its agreement with defendants was that only one transit privilege should accrue to a shipment from point of origin to final destination, defendants may not assert for the purposes of obtaining a through barge-rail rate that the shipment originated at New Orleans and for the purposes of transit privileges that its origin was at Cairo. It is agreed that the final destination was Sioux City, Iowa.

The plaintiff's position seems to me to be correct. The rail carrier was not compelled to grant the transit privilege and in granting it could prescribe terms which should be complied with. It did so, and plainly stated that only one transit privilege would be given between point of origin and final destination. Sioux City is conceded to be the final destination. Defendants have utilized through rates upon the premise that the point of origin was New Orleans and by doing so have established a relationship between the rail and barge transportation justifying the contemplation and consideration of the initial shipment from New Orleans to Cairo in the determination of the rights of the parties under the contract between plaintiff and defendants. If it be argued that the result indicated requires the finding of an affirmative fact i. e. reference to the Western Trunk Lines tariff, by the application of principles of estoppel alone, it

will be sufficient answer that the recognition by both the water and rail carriers of the joint rail-barge line rate constitutes sufficient reference to or recognition of the Western Trunk Lines tariff. It follows that the point of origin as determined by the parties was New Orleans.

Findings of fact and Conclusions of Law having been filed judgment will be entered for plaintiff.